UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAIZEL BLUMBERGER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA HOSPITAL MEDICAL CENTER, *et al.*,<br><br>　　　　　Defendants. | Case No. 2:22-cv-06066-FLA (AYPx)<br><br>**ORDER DENYING GOVERNMENT'S MOTION TO REMAND AND SUBSTITUTING GOVERNMENT FOR DEFENDANT TILLEY [DKT. 56]** |

### RULING

Before the court is Movant the United States of America's (the "government") Motion to Remand ("Motion"). Dkt. 56 ("Mot."). Plaintiff Raizel Blumberger ("Plaintiff") joins the government's Motion. Dkt. 58. Defendant Dr. Ian B. Tilley, M.D. ("Tilley") opposes the Motion. Dkt. 61 ("Opp'n"). On August 28, 2025, Tilley filed a Notice of Decision, advising the court of the August 27, 2025 decision in *A.H., et al. v. Ahmad Khalifa, M.D., et al.*, Case No. 2:22-cv-07148-DSF (PVCx) (C.D. Cal. Aug. 27, 2025). Dkt. 65.

On July 8, 2025, the court found the Motion appropriate for resolution without oral argument and vacated the hearing set for July 11, 2025. Dkt. 64; *see* Fed. R. Civ.

1

P. 78(b); Local Rule 7-15.  For the reasons stated herein, the court DENIES the Motion and SUBSTITUTES the government for Tilley.

## DISCUSSION

None of the facts relevant to the Motion appear to be disputed.  This is a medical malpractice action arising from the allegedly negligent delivery of Plaintiff's child, which resulted in injuries to Plaintiff.  The delivery occurred at California Hospital Medical Center (the "Hospital"), but direct physician services were provided by Eisner Pediatric & Family Medical Center ("Eisner") employees Tilley and Dr. Jennifer Sternberg, a resident who was supervised by Tilley, the attending physician.  Dkt. 1-1 ("Compl.")[1] ¶¶ 4, 8.

On November 2, 2022, the court issued an Order remanding the action to the Los Angeles County Superior Court (the "Remand Order").  Dkt. 36.  On September 9, 2024, the Ninth Circuit vacated that Order.  Dkt. 50; *see Blumberger v. Tilley*, 115 F.4th 1113 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2818 (2025).  On March 11, 2025, the court recalled its Order remanding the action.  Dkt. 55.  The court incorporates by reference the factual background and procedural history set forth in the Remand Order, Dkt. 36, and the Ninth Circuit's Opinion, Dkt. 50.

Under the Federally Supported Health Centers Assistance Act ("FSHCAA"), federally funded health centers and their employees can be "deemed" federal employees of the Public Health Service ("PHS") for the purpose of malpractice liability.  42 U.S.C. § 233(g).  "The immunity for deemed PHS employees is identical to the immunity for true PHS employees."  *Blumberger*, 115 F.4th at 1117 (citing 42 U.S.C. § 233(g)(1)(A)).  "Deeming" of a private entity or individual applies "with respect to services provided … to all patients of the entity."  42 U.S.C. § 233(g)(1)(B).

---

[1] Citations to the Complaint refer to pages 3–8 of Dkt. 1-1.  The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

2

1  When a deemed community health center or its employees are sued for actions taken
2  within the scope of their employment, and a claim for damages due to personal injury
3  from medical services is made against such deemed entities or individuals, "the
4  United States is similarly substituted as the defendant and the action proceeds as an
5  FTCA suit." *Blumberger*, 115 F.4th at 1117 (citing 42 U.S.C. § 233(a), (g)(1)(A)).
6  However, the health center and its employees' deemed status only applies in specific
7  cases if the services were provided to either a patient of the deemed entity or to non-
8  patients in certain circumstances after approval by the Secretary of Health and Human
9  Services. 42 U.S.C. § 233(g)(1)(B).
10  The government argues Tilley provided Plaintiff with inpatient care at the
11  Hospital pursuant to a contract with the Hospital, not within the scope of his
12  employment as a deemed PHS employee, and that the FSHCAA, therefore, does not
13  compel the United States to defend Tilley in this suit. Mot. at 9. Tilley responds he is
14  immune from suit because Plaintiff was an established Eisner patient who received
15  prenatal care at Eisner approved by the Department of Health and Human Services
16  ("HHS"), and that his provision of perinatal care, albeit at the Hospital, was in
17  furtherance of Eisner's HHS-approved federal project, on Eisner's behalf, and within
18  the scope of his deemed federal employment. Opp'n at 7.
19  There is no dispute Eisner is a private community health center that had been
20  deemed a PHS employee for purposes of 42 U.S.C. § 233 at the time of the allegations
21  in this action. Dkt. 1-2. Tilley provided OB/GYN services at the Hospital pursuant to
22  a contract (the "Contract") between Eisner and the Hospital. Dkt. 56-1 ("Chapman
23  Decl.") ¶ 4; Dkt. 56-6 (Contract). The Contract covered care of both preexisting
24  Eisner patients as well as certain other patients who presented for OB/GYN services at
25  the Hospital. Contract § 2.1. At the time of the alleged malpractice, Plaintiff had
26  been admitted as a patient at the Hospital. *See* Chapman Decl. ¶ 3; Dkt. 56-2
27  ("Plaintiff's Medical Records") at 1–2.
28  The government does not dispute Plaintiff was a preexisting prenatal patient of

3

1  Eisner in its outpatient clinic at the time she received care at the Hospital.  Mot. at 21.
2  Indeed, Plaintiff's medical records reflect she received prenatal care at Eisner prior to
3  being admitted to the Hospital with uterine contractions on January 3, 2018.
4  Plaintiff's Medical Records at 1–2.  Plaintiff was discharged from the Hospital the
5  next day.  *Id.* at 5–6.

6       The court agrees with Tilley that, based on the facts presented, Plaintiff was a
7  patient of the health center, so "coverage is straightforward: the Secretary's 'deeming'
8  determination 'appl[ies] with respect to services provided' to 'all patients of the
9  entity.'"  *O'Brien v. United States*, 56 F.4th 139, 149 (1st Cir. 2022) (quoting 42
10 U.S.C. § 233(g)(1)(B)-(C)).  The government's argument to the contrary—that Tilley
11 was providing care to the Hospital's patient on behalf of the Hospital, not to Eisner's
12 patient as part of Eisner's federally funded project—rests on an erroneous assumption
13 that preexisting Eisner patients ceased to be Eisner patients upon receiving continuing
14 inpatient care at the Hospital.  Mot. at 19–22; *see Paz Aguilar v. Jacobs*, Case No.
15 2:24-cv-08715-MRA (MARx), 2025 WL 3089967, at *2 (C.D. Cal. Nov. 5, 2025).

16       The Contract between Eisner and the Hospital is silent on whether patients
17 admitted to the Hospital are considered Eisner patients, Hospital patients, or both.  *See*
18 Contract.  However, the Contract specifies that care under the Contract would include
19 "all labor, delivery and other services provided through the [OB/GYN] Department to
20 [Eisner] patients."  Contract § 2.1.  Accordingly, Eisner and the Hospital
21 "contemplated that preexisting Eisner patients, like [Plaintiff], would be admitted for
22 OB/GYN continuing care, and that those patients would be treated by Eisner
23 employees" during their Hospital admission.  *Paz Aguilar*, 2025 WL 3089967, at *2.

24       The government points to the Contract's referral provision, § 4.2, to argue "the
25 contract disavows the idea that Eisner and the Hospital … agreed to refer Eisner's
26 patients to the Hospital."  Mot. at 21.  The court disagrees with this characterization of
27 the Contract, and finds the "provision only disavows any contractual expectation or
28 requirement that Eisner would refer or admit its patients to [the Hospital] over other

4

health care delivery sites. It does not speak to the continuity of care for Eisner patients who are referred to [the Hospital] and admitted for inpatient services." *Paz Aguilar*, 2025 WL 3089967, at *2.

As in *Paz Aguilar*, the court "finds persuasive the district court's decision in *A.H.* and adopts its reasoning in full." *Id.* The facts in *A.H.* and *Paz Aguilar* are similar to those presented here. The plaintiffs in *A.H.* sued Eisner for medical malpractice, alleging negligent delivery of a newborn at the Hospital. *A.H*, 2025 WL 2472476, at *1. The plaintiffs in *Paz Aguilar* filed a similar suit arising from the stillbirth of their child at the Hospital. *Paz Aguilar*, 2025 WL 3089967, at *1. As here, the plaintiffs in both actions were preexisting prenatal OB/GYN patients of Eisner's outpatient clinic, who were admitted to the Hospital for the purpose of having their babies delivered. *Id.* at *2; *A.H*, 2025 WL 2472476, at *1.

The government makes the same argument here that it made in *A.H.* and *Paz Aguilar*:

> [T]he contract creates a separate line of business for Eisner wherein Tilley was treating a Hospital patient, regardless of where that patient may have received any prior medical care. Indeed, the contract disavows the idea that Eisner and the Hospital ha[d] agreed to refer Eisner's patients to the Hospital. [Citing Contract § 4.2(a)]. Instead, Tilley was treating the Hospital's OB/GYN patients, some of whom *might* have had prenatal care at an Eisner facility. Thus, all care under the contract, regardless of whether a patient was previously treated by Eisner, lacks the required causal connection between the care and a "patient[] of the entity" under § 233(g)(1)(B)(i), such that the care would "result from" treatment of a health center patient.

Mot. at 21 (emphasis in original).

The *A.H.* court held that the government's argument was "either conclusory or rest[ed] on a strained, selective reading of the contract between Eisner and the Hospital[,]" and that the government "fail[ed] to substantiate its (implicit) view that a patient can only be a patient of either the Hospital or Eisner but not both at the same time." *A.H.*, 2025 WL 2472476, at *2. The *A.H.* court reasoned that, even if the

5

1  Hospital's contract "allow[ed]/require[d] Eisner to provide care to Hospital patients
2  who [were] not otherwise Eisner's patients, the government fail[ed] to explain why
3  that fact somehow 'un-patient[ed]' preexisting Eisner patients when they [were]
4  admitted to the Hospital for continuation of care previously received at Eisner
5  outpatient facilities." *Id.*

6  The *A.H.* court further reasoned the government's position was at odds with
7  HHS's "Federal Torts Claims Act Health Center Policy Manual," which explicitly
8  acknowledged that the "provision of local inpatient hospital care to a covered entity's
9  patients [was] considered part of the continuity of care of the patient and [was]
10 covered by [the] FTCA if the service provided at the local hospital [was] within the
11 covered entity's scope of project and the covered individual's scope of employment."
12 *Id.* (citing FTCA Manual at 11).  Accordingly, the court concluded that even if the
13 services at issue "partially satisfied Eisner's obligations under the contract with the
14 Hospital," "the government fail[ed] to point to anything in § 233 that suggest[ed] that
15 services otherwise covered by § 233(a) [were] not covered if those services also in
16 some sense provide[d] an ancillary benefit to a third-party." *Id.* at *3.

17 The government also argues 42 C.F.R. § 6.6, which interprets the FSHCAA,
18 "confirm[s] that the care at issue in this action is not within Eisner's deeming."
19 Dkt. 56 at 19.  Like in *A.H.*, the court disagrees and finds that the government
20 "conflates different provisions of that regulation." *A.H.*, 2025 WL 2472476, at *3.
21 Subsection (c) provides that "covered individuals" must be acting "within the scope of
22 their employment" to be covered.  42 C.F.R. § 6.6(c).  As discussed *supra*, "the
23 provision of local inpatient hospital care to a covered entity's patients is considered
24 within the covered individual's scope of employment." *Paz Aguilar*, 2025 WL
25 3089967, at *3.  Accordingly, "[t]he actual question is whether *Eisner* was acting
26 within the scope of its grant when [its employees] provided the services." *A.H.*, 2025
27 WL 2472476, at *3 (emphasis in original).  Relatedly, subsection (d) provides that
28 "[o]nly acts and omissions related to the grant-supported activity of entities are

6

covered" and that acts "related to services provided to individuals who are not patients of a covered entity will be covered" only if HHS determines that an exception applies. *Id.* § 6.6(d).

The question here, therefore, is whether Plaintiff was a patient of Eisner at the time of the allegations. The court concludes Plaintiff was Eisner's patient because the labor and delivery services provided at the Hospital "were for continuing care within Eisner's scope of project." *Paz Aguilar*, 2025 WL 3089967, at *3. The fact that Tilley, the attending physician, was also supervising a resident does not "un-patient" Plaintiff. Because Plaintiff was a preexisting Eisner patient who received a continuation of that care at the Hospital, she was an Eisner patient, and Tilley was acting within the scope of his employment when he treated Plaintiff. *See id.* at *4.

## **CONCLUSION**

Tilley has been deemed a PHS employee for purposes of 42 U.S.C. § 233, and the medical services that form the underlying basis of this action were provided to an Eisner patient. Therefore, for the foregoing reasons, the Motion is DENIED. The government is SUBSTITUTED for Tilley as the Defendant in this action, pursuant to 42 U.S.C. § 233 *et seq.*

IT IS SO ORDERED.

Dated: March 2, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge